## SHERRARD *v.* UNITED STATES (No. 922).[1]

LEATHER, DRESSED AND FINISHED.

The importation, while not entirely finished for its intended use, is nevertheless raised above classification as rough leather, using that term as it appears in the paragraph that controls (paragraph 451, tariff act of 1909). It was properly assessed as dressed leather.

United States Court of Customs Appeals, November 14, 1912.

APPEAL from Board of United States General Appraisers, Abstract 28293 (T. D. 32455).

[Affirmed.]

*Lester C. Childs* for appellant.

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Charles D. Lawrence*, special attorney, on the brief), for the United States

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case was imported under the tariff act of 1909, and consists of leather intended for use in the manufacture of razor strops.

The appraiser reported the leather to be "horse butts dressed and finished and ready to be cut into razor strops." Return for duty was made as dressed leather under paragraph 451, and duty was accordingly assessed at the rate of 15 per cent ad valorem.

The importers protested against this assessment, and contended that the leather was dutiable under paragraph 451 at 5 per cent ad valorem as rough leather, or alternatively at that rate as sole, band, bend, or belting leather.

The protest was heard upon evidence by the Board of General Appraisers, and the same was overruled. The importers now prosecute their appeal to this court for a reversal of that decision.

The following is a copy of the applicable parts of paragraph 451 of the act of 1909:

451. Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem; dressed upper and all other leather, calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; * * *.

The question arising in this case therefore is whether the importation falls within the class of leather made dutiable by the foregoing provisions at 15 per cent ad valorem, as held by the collector, or within the class made dutiable at 5 per cent ad valorem, as contended by the importers.

It clearly appears from the testimony that the leather as imported is not "ready to be cut into razor strops," as reported by the ap-

---

[1] Reported in T. D. 32966 (23 Treas. Dec., 424).

praiser.  To the contrary, such leather is subjected after importation to 18 different additional processes before it is entirely finished as material for razor strops.  The importation therefore is not completely finished as material for the special use for which it is designed.

On the other hand, it is equally clear that the imported leather is not only tanned but also dressed or finished for general use as leather. The appraiser's return states that the importation is dressed and finished, and that statement is sustained by the exhibits filed in the case.  The oral testimony does not overcome the effect of this finding by the appraiser.  Rough leather within the meaning of paragraph 451 is such as is tanned only, and not dressed or finished.  The importation, therefore, while not entirely fitted for its intended use, is nevertheless raised above the classification of rough leather as that term is used in the controlling paragraph.  There is no showing made by the importers in support of their alternative claim that the imported leather is sole, band, bend, or belting leather.  The importation is therefore denied admission to the class covered by the 5 per cent duty, and falls within the 15 per cent class.  This confirms the assessment made by the collector, and the decision of the board sustaining the assessment is therefore approved and *affirmed*.